GEORGE W. CHAPMAN, Appellant, v. THE CITY OF BROOKLYN, Respondent.

The municipal authorities of Brooklyn having caused measures to be taken in apparent conformity with the statute (Laws of 1850, chap. 144), regulating the subject, for the assessment upon the lots deemed to be benefited of the expense of grading and paving a certain avenue in that city, the amount of estimated benefit to two lots was assessed against parties *who were not the owners of them.* Judgment for the amount of such assessment against these persons having been entered up in the form provided by the statute, and executions thereon having been returned unsatisfied, the lots were put up for sale by the city street commissioner, and struck off to a purchaser, who paid over the amount of his bid, and received the usual certificate of sale. The money was transmitted by the street commissioner to the city treasury. In an action by the assignee of this certificate, and of all claim and right of action of the purchaser by reason of the premises, brought against the city to recover back the money paid, with interest,—*Held,* that the assessment proceedings and sale were absolutely void for want of jurisdiction, the assessment not having been made against the *owner* of the lots.

It was further *held* (LOTT, J., dissenting), that the plaintiff could recover, on the ground of an entire failure of the consideration for which the money was paid to the city.

The statute requiring the assignment of certificates of sale to be filed in the street commissioner's office has no application to the assignment of such a claim.

*It seems* that a verbal promise or announcement by the commissioner at the time of the sale, that in case of any failure of title the money would be refunded to the purchaser, not incorporated in the certificate, is of no validity and does not bind the city. DANIELS, J.

(Argued March 29th, 1869, and decided June 11th, 1869.)

AN assessment was made by the defendant for the purpose of raising the money necessary for the payment of the expenses of grading and paving Lafayette avenue, from Bedford to Division avenue, in the city of Brooklyn. By this assessment lot forty-five, on the assessment map, was assessed the sum of $893.62, and lot sixty was assessed the sum of $1,100.43, as the amounts they were severally deemed benefited by the improvement. These lots were assessed to

Emily P., Charles W., and Elizabeth Greene, as their owners. The assessments were not paid, and they were returned by the collector as unpaid. Judgment was afterwards entered up in conformity with the provisions, at that time in force, contained in the charter of the city of Brooklyn. This judgment was entered against the persons who were named in the assessment as the owners of the lots. Execution was issued upon the judgment, for its collection, and returned wholly unsatisfied. The county clerk thereupon certified the fact to the street commissioner that the execution had been returned unsatisfied, and he, after giving the requisite notice, sold the lots to Timothy Bannon, and delivered to him the usual certificates of sale. The assessments were made on the 10th of July, 1854; the sale on the 11th of October, 1855, and the certificates on the thirty-first of that month. At the sale, the commissioner gave notice to the bidders that the money would be refunded to the purchasers, with seven per cent interest, if the assessment or any of the subsequent proceedings essential to the conveyance of the term of 1,000 years, sold in these lots, proved to be irregular or void, or if for any reason the sale should be void, but this agreement was not incorporated in the certificates of sale afterwards made and delivered to the purchaser. On the 15th of September, 1856, Bannon, the purchaser sold and assigned the certificates received by him on the sale of these lots to the plaintiff, with all his claim, right of action and demand against the defendant growing out of the premises, but the assignments were not filed in the street commissioner's office.

The lots of land which were sold were not owned by the persons named as their owners in the assessment, and the proceedings subsequently taken for the collection of the amounts assessed. But they were owned by Aaron C. Underhill prior to the 30th of April, 1853, and on that day he conveyed them to D. D. Wynant, who continued in possession of them to the 1st of November, 1855, when he conveyed them to other persons. Neither Underhill nor Wynant were named in any of the proceedings taken by the defendant for the

assessments upon the lots, the collection of the assessments, or the sale of the lots.

The street commissioner made the sale on behalf of the defendant, received from the purchaser the amount due upon the assessments, and immediately paid it over to the defendant's treasurer. In July, 1860, this action was brought to recover back the money paid, with interest, on the ground that the proceedings taken by the defendant were void for want of jurisdiction. Upon the trial at the circuit, a verdict was directed for the plaintiff. The defendant excepted to this direction, and also to the refusal of the court to nonsuit the plaintiff, and the exceptions were ordered to be first heard at the General Term in the second district. That court set aside the verdict and directed a new trial; and from that order the plaintiff appealed, giving the stipulation required in such cases by the Code.

*William H. Scott,* for the appellant, cited upon the point that the assessment proceedings and sale were void, Laws of 1850, pp. 280, 281; *Sharp* v. *Speir* (4 Hill, 76); *Sharp* v. *Johnson* (id., 92). That the money could be recovered back as paid under a mutual mistake of facts, 4 Seld., 33; 26 Barb., 423; 4 E. D. Smith, 404; 19 J. R., 73, 77; 9 M. and W., 54; 1 Wend., 355; 3 id., 412; 16 Conn., 548; 3 Comst., 230; 4 M. and Gr., 11; 8 Cow., 195; 8 C. B. N. S., 477. That it could be recovered upon the ground of failure of the consideration, Chitty on Contr., 8 Am. Ed., 538; 1 Parsons on Contr., 5th ed., 462; 2 Kent, 471; 19 J. R., 73, 77; 12 id., 363; 3 Cow., 272; 2 Den., 339; 7 Met., 438; 11 id., 268; 2 Kern. 147. That the plaintiff was entitled to a return of the money as *ex aequo et bono* the money of his assignor in an action for money had and received, 3 Bl. Com., 162; 6 Wend., 209; 13 id., 488; 2 Den., 91; 7 Mass., 286. The city can now collect the money from those by whom it should have been paid, by reassessment, Laws of 1850, p. 280; 29 N. Y., 198; 11 Paige, 596. The money is recoverable by the plaintiff under the parol promise of the Commissioner at

the sale, 1 Sand., 485; 17 N. Y., 449; 21 id., 238; 31 id., 611; 5 Hill, 137; 7 Wend., 37.

*William C. De Witt,* for respondent.

DANIELS, J.   It is not necessary that certain minor objections to the validity of the defendant's proceedings should be noticed, for they were utterly and entirely void on account of the omission to institute and carry them on against the owner or occupant of the lands intended to be affected by them.   It was an attempt to sell and divest the property owned and occupied by one person, by means of proceedings taken and carried on against three other persons.   The statute providing for these proceedings did not permit that to be done.   By that statute the expenses of grading and paving streets in the city of Brooklyn were required to be apportioned and assessed by one or more commissioners, not exceeding three, to be appointed by the county judge of Kings county, or a justice of the Supreme Court.   After taking the oath prescribed for them, they were required to view the premises and assess the expense of the improvement upon the lots, or pieces of land benefited, in the proportion to the benefit to be derived, or that, in justice, should be assessed on account of the improvement.   They were then required to make a report of their assessment, give five days public notice of the time and place when parties interested in it might be heard, and, after hearing them, to complete the report and return it, with the objections made to the assessments, to the common council of the city.   After its examination and confirmation, and after the proceedings for laying the assessment were examined and certified to be correct by the street commissioner and attorney and counsel of the city, a warrant for the collection of the assessments made was required to be issued by the common council to the collector of the city; and by such warrant he was to be required to collect the assessments from the several persons mentioned in the assessment roll annexed thereto.   When

the time mentioned in the warrant for the collection of the assessments expired, the collector was required to make and deliver to the comptroller of the city an account of such as remained unpaid. This account was to be verified by the affidavit of the collector, who was also required to show that he had not, upon diligent inquiry, been able to discover any goods or chattels belonging to or in the possession of the persons charged with or liable to pay the sums unpaid, wheron he could levy the same, and that he did, within forty days after receiving the warrant, cause notice to be served personally, or left at the residence of the person or persons charged with, or liable to pay the assessment, if residing within the city of Brooklyn; and that he also caused a notice to be published, for six successive weeks in the corporation paper, prior to the expiration of the warrant, containing the name or title of the improvement, the names of the persons who had not paid the amount due from each, the time when the warrant would expire; and that, unless the amount, with the expenses and percentage, should be paid at or before the time when the warrant would expire, judgment would be entered in the Supreme Court in Kings county for the same, besides costs. Upon filing a copy of the warrant, assessment roll, affidavit and account certified by the comptroller, in the clerk's office of the county, the county clerk was authorized thereupon to enter judgments according to the terms of the published notice against each of the persons named in the collector's account for the sums stated to be due, with five dollars costs. Executions were then to be issued against the personal property, only, of the defendants. It was then declared that in no case should any of the real property of the defendant be sold or affected by the judgment or execution, other than that which was originally assessed. If the execution was returned unsatisfied, the county clerk was to deliver the street commissioner a certificate of that fact, who, after giving six weeks notice of sale in the corporation newspaper, was required to proceed to sell the real estate of the defendant or defendants, which was

liable for and subject to the original assessment. (Laws of 1850, 271, § 22; 272, §§ 24, 25, 27; 277, §§ 10, 11; 278, §§ 12, 15; 280, § 23; 281, §§ 24, 25, 26; 282, §§ 27, 30.)

From this statement of the provisions of the statute, it will be seen that it contemplated and required that the assessment for the improvement of this avenue, should be made upon the land itself, so far as it was deemed to be benefited by it. And that proceedings for its payment were to be taken against the person who, as owner, became liable to pay it. These proceedings were required to be taken and carried on against him by name, and in case they proved ineffectual for the collection of the assessment, then and then only was the land assessed to be sold for the purpose of procuring payment. To authorize the sale, it was not only required that the land should be assessed; but, in addition to that, the statute equally as explicitly required, that it should also be the land of the defendant or defendants in the judgment entered up for the non-payment of the assessment. The commissioner was given authority to sell such lands, and no authority was conferred upon him for selling any other lands. (Laws of 1850, 282, §§ 27, 29, 30.)

The judgment, as well as the previous proceedings, taken for the making and collection of the assessments upon the lots referred to, were not taken against the owner of them; but against these persons having no interest whatever in them. And they could not, therefore, within the terms of the statute, be sold for the non-payment of the assessment by the street commissioner. Before the property assessed could be sold, the law required not only that the owner should have an opportunity to pay the assessment, but beyond that, that proceedings should have been taken against him for its collection. The right to sell, depended upon the taking and consummation of those proceedings in the manner prescribed by the statute. The omission to take them against the owner of the lots, was jurisdictional in its nature, and it rendered the commissioner powerless to affect them by the sale which he attempted to make of them. (*Sharp v*

*Speir*, 4 Hill, 76.) No consideration therefore existed enti-
tling the defendant to the money it received from the pur-
chaser upon the sale of these lots.

When the sale was made, the street commissioner making
it announced to the purchasers that the money would be
refunded to them, with interest, in case the sale, on account
of the invalidity of the proceedings leading to it, should be
rendered ineffectual. But this notice was not in writing, and
was not afterwards, in any manner, incorporated or referred
to in the certificates given by the defendant. These certifi-
cates were in the nature of contracts, and for that reason
they could not be legally extended, enlarged or modified by
anything which had previously been announced, and was
totally excluded from them. In this respect the case differs
from that of *Bennett* v. *Mayor of New York* (1 Sand., 485),
where the announcement and the promise were in writing.
The plaintiff's right to recover therefrom, must depend not
upon what was stated by the commissioner to the purchasers
at the sale, but upon his legal rights under the other circum-
stances of the case.

There is no force in the objection that the assignment from
the purchaser to the plaintiff should have been filed in the
street commissioner's office, in order to transfer to him the
right of the purchaser to recover the money paid. For the
section of the statute requiring assignments to be filed,
applies solely to the assignment of the certificate of sale as a
certificate, and it has no application to the assignment of a
new cause of action for the recovery of money the defendant
may have become legally and equitably bound to pay on
account of its inability to comply with the obligations created
by the sale. (Laws of 1850, 283, 4, § 33.)

In ordinary cases, the circumstances established in this
action would be sufficient to entitle the plaintiff to recover
the money paid upon the sale with interest, for the consid-
eration of the sale has entirely failed. The defendant sup-
posed its own proceedings had been regular, and that it was
consequently entitled to sell the land in question for the pay-

ment of the assessments made upon it, and under the same impression the lots were bid off by the purchaser. The defendant received the purchaser's money for the right to the title it was expected and believed would be ultimately conveyed, if the land was not afterwards redeemed from the sale. In fact, the city had no power to sell or in any manner affect or incumber the land in favor of the purchaser. It was unable to give him for his money, the right on account of which the city received it. And if the defendant can succeed in retaining it, that must be done on account of some peculiar immunity enjoyed by it as a corporation.

The court below justified itself in pronouncing against the plaintiff's right, on the ground that the city in effect, raised the money for the payment of the contractor who graded and paved the street; and that it was to be presumed that it had been paid over. No pretence of this nature was advanced upon the trial. And there is nothing in the pleadings or the facts proved, suggesting the propriety of such a presumption. Under that state of the case, no well established principle of law warranted the General Term in indulging in such a presumption, particularly as it was directly against the judgment recovered at the Circuit. Where presumptions are entertained in the disposition of cases before appellate courts, they are applied to the affirmance instead of the reversal of the judgment under consideration.

The rule ordinarily applicable to cases of this description is well stated by Parsons in his work upon contracts. It is as follows : " Where the consideration appears to be valuable and sufficient, but turns out to be wholly false, or a mere nullity, or where it may have been actually good, but before any part of the contract has been performed by either party, and before any benefit has been derived from it to the party paying or depositing money for such consideration, the consideration wholly fails, then a promise resting on this consideration is no longer obligatory, and the party paying or depositing money upon it can recover it back." (1 Parsons on Cont., 2d ed., 386.) And to the same effect are *Colville*

v. *Besly* (2 Denio, 139, 142); *Bank of Commerce* v. *Union Bank* (3 Cow., 230, 237); *Mowatt* v. *Wright* (1 Wend., 355, 360); *Wheadon* v. *Olds* (20 Wend., 174); *Waite* v. *Leggett* (8 Cowen, 195).

No sound reason exists for exonerating even municipal corporations from the controlling effects of this wholesome principle; for it is equally as unjust and inequitable for them to retain money they have acquired without consideration, as it is for a private person to attempt to do so. No principle of morals or of law can be invoked against the latter, which does not apply with the same force to the case of the former; and this has generally been heretofore regarded as including corporate bodies, as well as private persons (Angell and Ames on Corporations, 4th ed., § 237 and cases cited in note 4 id., § 379), such bodies being held liable upon implied as well as express promises. (*Danforth* v. *President, &c.,* 12 John., 227, 231; *Bank of Columbia* v. *Patterson's Adm'r,* 7 Cranch, 299.) In the last case Judge Story, delivering the opinion of the court, said: "It would seem to be a sound rule of law that, wherever a corporation is acting within the scope of the legitimate purposes of its institution, all parol promises made by its authorized agents, are express promises of the corporation; and all duties imposed on them by law, and all benefits conferred at their request, raise implied promises, for the enforcement of which an action may well lie." (Id. 306.)

Under the action of the benign principle already mentioned as applicable to cases of this description, it has been repeatedly held in other States that taxes illegally imposed and collected might be recovered back from the municipality into whose treasury they had been paid. (*Gillette* v. *Hartford,* 31 Conn., 356; *Slack* v. *Norwich,* 33 Vermont, 818, 823; *Preston* v. *City of Boston,* 12 Pick., 7; *Boston and Sandwich Glass Company* v. *Boston,* 4 Met., 181; *Dow* v. *Boston,* 6 Gray, 131; *Dunnell Manufacturing Company* v. *Pawtucket,* 7 Gray, 277; *Joyner* v. *Third School District,* 3 Cushing, 567; *Shaw* v. *Becket,* 7 id., 442; *Toney* v. *Inhabi-*

*tants of Millbury,* 21 Pick., 64; *Joy* v. *Oxford,* 3 Green-leaf's Repts., 131.)

The propriety of applying this principle to the recovery of taxes and assessments unlawfully imposed, has been doubted, though not positively denied, in this State. (*Swift* v. *City of Poughkeepsie,* 37 N. Y., 511.) As the assessors in that case, did not proceed without jurisdiction, the plaintiff was properly defeated on that ground, so that no actual decision was made upon this point. The remedy may be withheld from that class of cases, without affecting the present controversy, for they may be reviewed by certiorari, or the assessors acting without jurisdiction may render themselves personally liable for the money afterwards collected under their proceedings. (*Mygatt* v. *Washburn,* 15 N. Y., 316.) But in the present action the plaintiff must recover the money from the defendant or be left entirely without redress. No very good reason can be urged against maintaining the rule, as far as it has been extended in the other States, since there is no room for doubting but that a remedy would be afforded between individuals for the recovery of money in cases where, by color of void judicial proceedings, it might be forcibly taken from one and delivered to another.

The defendant will be subjected to neither loss nor hardship in being compelled to refund the money in controversy, for it has still the power to make the assessment as it should have been made upon these lots, and to institute and carry on the proceedings required for its lawful collection. (Laws of 1850, 280, § 21; *Meech* v. *City of Buffalo,* 29 N. Y., 198, 214–15.)

In the present case, the defendant's own certificates imply an obligation to convey the term sold in the lots, for they contain a statement that, at the expiration of two years, the purchaser would become entitled to a conveyance of the premises. Not a mere formal conveyance, but one which would secure to him the fruits of his purchase, in case no redemption should be previously made. And that obligation it is out of the power of the defendant to perform.

The money in controversy, both legally and equitably, belongs to the plaintiff, and it would not be creditable to an enlightened administration of the laws to turn him out of court without it.

The order should be reversed and judgment final directed for the plaintiff upon the verdict with costs.

WOODRUFF, MASON, GROVER and JAMES, JJ., were for reversal, on the grounds stated by DANIELS, J. HUNT, Ch. J., was also for reversal, on the ground that the money could be recovered back as paid under a mistake of fact. He also thought the city were liable upon the commissioner's parol promise to refund the money paid over to the city by him, having been obtained from the purchaser upon the strength of such promise.

LOTT, J., was for affirmance. He thought the city a mere agent to collect this money and apply it to a specific purpose under a statute, and having done so, they had no right to take money from the general fund of the city with which to repay it.

GROVER, J., also would have had difficulty in affirming the recovery, if it had appeared that the money had been actually applied by the city to the specific purpose of defraying the expense of paving and grading the avenue; but thought there was no evidence in the case from which this fact could be inferred.

Order of General Term reversed and judgment absolute for the plaintiff ordered.