GEORGE TAYLOR

*v.*

THE PEOPLE *ex rel.* WM. KELSEY REED.

1. SPECIAL ASSESSMENT—*on city property, void.* In the absence of express statutory authority to levy special assessments upon the real estate of a city, no such power can be implied, from the very nature and purpose of creating such corporate body, nor has a city or its officers, in absence of express authority, the power to tax its property for the purpose of raising revenue for the city. Therefore, when the city of Chicago made a special assessment upon its own property under which its real estate was sold, it was held that the sale was void and conferred no title on the purchaser, or right to demand redemption in double amount for which the property was sold.

2. SAME—*former decision explained.* In the case of *Scammon* v. *The City of Chicago,* 42 Ill. 192, it was said that the real estate of the city, benefited by a public improvement, should be assessed, but the court did not say, or intend to say, that it should be advertised and sold like the property of individuals. Such an assessment, when made, and the amount ascertained, should be paid for the improvement by the city out of the general fund.

3. ESTOPPEL—*to question validity of a void proceeding.* Where the city, without any authority of law, through its officers, made a special assessment upon real estate belonging to the city, gave the notice, applied for and obtained judgment, and sold the same, giving a certificate of purchase

to the purchaser, it was urged that the city was estopped from denying the power and from escaping liability the same as if it had possessed full power: *Held*, that, as a general rule, the acts of an officer which are prohibited by law are utterly void and estop no one, whether officers or strangers. The doctrine of *caveat emptor* applies to such sales.

4. MANDAMUS—*to recover money paid on void sale, from a municipal corporation.* Where a city, through its officers, made a special assessment upon its own real estate and sold the same, without any authority of law, and afterwards set apart double the amount of the sale for redemption: *Held*, on an application for a *mandamus* by an assignee of the certificate of purchase, to compel the comptroller to pay him the redemption, that, as the sale was void, he was not entitled to double the amount of the sale, but was entitled to a *mandamus*, compelling the comptroller to issue his warrant on the city treasurer for the sum paid to the collector by the purchaser at the sale.

APPEAL from the Circuit Court of Cook county.

Mr. I. N. STILES, and Mr. JOHN LEWIS, for the appellant.

Mr. R. W. RICABY, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a proceeding by *mandamus*, instituted by appellee, in the circuit court of Cook county, against the comptroller of the city of Chicago, to compel the payment of a sum of money to appellee.

It appears, from the record, that the board of public works levied a special assessment on a lot belonging to the city. It not having been paid, the lot was advertised, and other steps taken, which resulted in a sale thereof for the satisfaction of the assessment, and it was purchased by one John Forsythe for $122.23, the amount of the assessment imposed upon this lot, and costs ; that, on making the sale, the city collector gave to him a certificate of purchase of the premises ; that afterwards, and before the time allowed for redemption had expired, Forsythe sold and assigned the certificate of purchase to relator ; that, before the expiration of two years from the time the sale

was made, the city comptroller directed the treasurer to transfer from the general fund of the city, $244.46, and credit the same to the personal redemption fund, and he received the treasurer's voucher therefor and filed the same in his office, and made an entry of the facts on the records of his office; that, subsequently, relator surrendered his certificate of purchase to the comptroller and demanded of him a warrant on the treasurer for double the amount of the purchase money paid at the sale of the lot, but he refused to draw such a warrant in favor of relator; that the money thus ordered to be transferred by the comptroller from the general to the personal redemption fund, can not be paid out of the treasury except on the warrant of the comptroller.

The court below having sustained a demurrer to the return, from which these facts appear, a judgment awarding a peremptory writ of *mandamus*, was rendered, and defendant brings the case to this court on appeal.

There is no express provision of the charter of the city which authorizes taxes or special assessments, for improvements, to be made on the real estate of the city, and from the very nature and the purpose of creating such a body, we can not imply such a power. The city or its officers would, in the absence of express authority, have no power to tax its property for the purpose of raising revenue for the city; nor can it impose such a burthen as an assessment to improve the streets. The charter has required the city, out of its treasury, to pay such portion of the expenses of such improvements as can not be levied on property benefited thereby, and in levying the assessment an estimate should be made of the benefits that will be derived by the real estate owned by the city from the construction of the improvement; but in such cases the money can not be assessed upon, or made out of the city property; it should be directly paid from the treasury, and thus bear its due proportion of the expense. It is true, in the case of *Scammon* v. *The City of Chicago*, 42 Ill. 192, it was said that the real estate of the city, benefited by such an

improvement, should be assessed; but we did not say, nor did we intend to say, that it should be advertised and sold like property of individuals. Such an assessment is made when the amount is ascertained, which shall be paid for the improvement by the city out of the general fund.

When this sale was made, the city charter provided "that no property belonging to the city of Chicago should be sold or conveyed, except upon a vote of three-fourths of all the aldermen by law authorized to be elected." How can it be contended, in the face of this positive enactment, that the officers may disregard this prohibition and effect a sale, either intentionally or through negligence, or incompetency? As a general rule, of uniform application, an act can not be done indirectly which is prohibited from being done directly. The law is subject to no such reproach as that its provisions may be evaded and its requirements thus disregarded. The officers who acted in this case could not directly sell this property, nor could they inaugurate proceedings for the purpose, or which would produce that result. The only means by which the city or its officers could sell this property was in the manner pointed out in the charter. The collector acted without power, and all of the proceedings by him were without warrant, and void; hence, the purchaser acquired no lien on the property.

In the case of *The City of Chicago* v. *Hasley*, 25 Ill. 596, it was held that a *fieri facias* execution could not be issued against a municipal corporation; and this sale was made, if not under a special *fieri facias*, under process which answers the same purpose, and is intended to produce similar results —the sale, and divestiture of title in case a redemption is not made. But it is urged that the city having, through its officers, made the assessment, given the notice, applied for and obtained the judgment and made the sale, it is estopped from denying the power and from escaping liability as though they had possessed full power. As a general rule, so far as we

know, the acts of an officer, which are prohibited by law, are utterly void and incapable of ratification, and estop no one, whether officers or strangers. These acts being void in their inception, remain so, and no rights can be acquired under them. At such a sale, the rule of *caveat emptor* applies, and it is for the purchaser to see that there is power to make the sale, and the character of rights, if any, he acquires thereby. But the city or its officers have no right to protect themselves by their unauthorized act in acquiring and holding money to which they are not entitled. To permit them to do so would be to sanction wrong, if not fraud. The city, by the illegal acts of its officers, has in its treasury the money paid on the purchase of this lot, and it has the money wrongfully and has no right to hold it. And although there was no such sale as could affect the title of the city, and as the officers of the city were not authorized to redeem from such a sale, still they have no shadow of right to retain the money received on the sale. The *mandamus* should, therefore, have required the comptroller to issue his warrant on the treasurer for the sum paid to the collector by the purchaser at the sale. But it was error to require the payment of double that sum as though a redemption had been made, and for that error the judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*