Lalor v. Mayor &c. of New York.

pay her money from time to time. If she were content then to take such a promise instead of a decree of the court, she must be content now. No charge of fraud can be based on a mere promise, and the judgment cannot be disturbed on that ground.

With the entry of judgment in an action of divorce dissolving the marriage contract the jurisdiction of the court over the parties is terminated, except to enforce the judgment or correct mistakes (*Kamp* v. *Kamp*, 59 N. Y. 212).

There is no mistake nor error to be corrected in this case, and the plaintiff must be left with the judgment she knowingly consented to.

CHARLES P. DALY, Ch. J., and VAN BRUNT, J., concurred.

Order affirmed.

---

JOHANNA LALOR, Plaintiff, *against* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Defendants.

## [SPECIAL TERM.]

(Decided December 3d, 1883.)

Under the provisions in regard to assessment of taxes in the city of New York, that the deputy tax commissioners, in assessing real property, shall furnish a detailed statement, giving the street and ward map number of such real estate, with other particulars, to the commissioners, and that the latter shall keep books in which shall be entered in detail the assessed valuation of such property, which books shall be open for examination and correction, &c., a map of the property assessed is essential to a valid assessment, if there be no other designation or identification than by a ward map number. And the designation, in the tax commissioners' books, of a parcel of real estate, by a number stated to be a ward number but which does not correspond with any number on the ward map, is not a compliance with the statute, if the other particulars of description required are not shown to be correct; and such failure to describe the property as required by the statute invalidates the tax.

TRIAL of an action to cancel a tax.

Lalor *v.* Mayor &c. of New York.

The action was brought to cancel the tax for the years 1874 and 1875 on the lot, with the building thereon, now known as Ward Map No. $4\frac{1}{2}$, Block 228, of the Twelfth Ward, in the city of New York. The property is shown on the following diagram :

The lot in question, No. $4\frac{1}{2}$, is made up of the rear portions of the three lots 1, $1\frac{1}{2}$, and 2, which front on Second Avenue, No. $4\frac{1}{2}$ fronting on One hundred and twelfth Street.

The taking of the said rear portions to make a separate lot was actually effected in 1873, when the then owner, Patrick H. Lalor, husband of the plaintiff, built a house on such separate lot; but the ward map which now designates it, and the line which separates it from the Second Avenue lots, and the figures which indicate its dimensions, were first placed on the ward map in the office of the Tax Commissioners in the year 1876. Prior to that year there was no map of said lot $4\frac{1}{2}$, only the map of the lots 1, $1\frac{1}{2}$ and 2, showing them to extend back 100 feet in depth from Second Avenue.

The assessment roll, or record of assessed values for the years 1874 and 1875, in the Tax Commissioners' office, showed, however, an assessment of a lot $4\frac{1}{2}$, as the extract therefrom given on the following page sets forth: From that extract it is apparent that the Tax Commissioners made in the years 1874 and 1875 a separate assessment of lots 1, $1\frac{1}{2}$ and 2, as being only 80 feet in depth, showing that the assessment was separate from the rear portions, which had been taken to make the new lot. The question to be determined is whether they made a valid assessment of such new lot.

BLOCK No. 228.

BETWEEN FIRST AND SECOND AVENUES, BETWEEN ONE HUNDRED AND TWELFTH AND ONE HUNDRED AND THIRTEENTH STREETS.

| OWNER OR OCCUPANT. | DESCRIPTION OF PROPERTY. | | | | Ward No. | Street No. | Avenue. | Street. | Value of Real Estate. | Corrected Amount. | Remarks. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Size of Lot. | Size of House. | Stories High. | Houses on Lot. | | | | | | | |
| Dennis Julian | $18^{10}$ x 80 | $18^{10}$ x 50 | 4 | B | 1 | ...... | ...... | ...... | $6,000 | | |
| E. Birmingham | 19 x 80 | ...... | ...... | ...... | $1\frac{1}{2}$ | ...... | ...... | ...... | 1,000 | | |
| " | " | ...... | ...... | ...... | 2 | ...... | ...... | ...... | 1,000 | | |
| Dennis Julian | 19 x irreg | ...... | ...... | ...... | 3 | ...... | ...... | ...... | 1,000 | | |
| John Fay | 17 x " | 17 x 36 | 3 | W | $3\frac{1}{2}$ | ...... | ...... | ...... | 3,000 | | |
| " | $16^{8}$ x " | $16^{8}$ x 36 | " | " | 4 | ...... | ...... | ...... | 3,000 | | |
| " | 20 x 56 | 20 x 42 | 4 | B | $4\frac{1}{2}$ | 305 | ...... | ...... | 4,500 | | |

J. F. DALY, J.—In order to effect a valid assessment and tax upon real property the roll or record must sufficiently describe the premises. In this case, if the lot $4\frac{1}{2}$ on the rolls for 1874 and 1875 were intended for the lot in question, then the description on those rolls (except as to dimensions) failed to indicate or to identify the property sought to be assessed. The name of the owner is wrong (although that alone does not invalidate the tax, L. 1867, c. 410 § 5); the street number " 305 " is not shown to be the street number of the house on the lot in question; the description " between First and Second Avenues, between One hundred and twelfth and One hundred and thirteenth streets," and " block 228," is too general; and the ward number " $4\frac{1}{2}$ " is false, as it pretended to give a number on a ward map when there was no map in existence showing such a lot or containing such a number in block 228.

The location of the property assessed is the essential part of the description. As the only location of this lot on the roll was by a ward number in block 228 referring to a map of the ward, and there was no map which when referred to showed such a ward number, there was no location of the property.

A map of the property assessed is essential to a valid assessment if there be no other designation or identification than by a ward map number. When the deputy tax commissioners, under the direction of the Commissioners of Taxes and Assessments, assess all taxable property in the districts assigned to them for that purpose, they are required by the statute to furnish to the Commissioners under oath a *detailed statement giving the street and ward map number of such real estate*, together with the name of the owner, if known, and the sum for which in their judgment the property would sell under ordinary circumstances. By the same statute the Commissioners are required to keep in their office books called the annual record of the assessed valuation of real and personal estate, in which shall be entered in detail the assessed valuations of *such property*, which books shall be opened for examination and correction

from the first Monday of January to the first Monday of May in each year (L. 1859, c. 302 §§ 7, 8; 1 Bliss, Olney & Whitney 556). It will be seen that the book of assessed valuations open to the tax-payers, and which is the only record of assessment for taxation, is to contain "such property," *i. e.*, the same property as is described in the detailed statement furnished by the deputy commissioners to the commissioners; which statement must contain the street and ward map number of the real property. The designation of a parcel of real estate by a number stated to be a ward number, but which does not correspond with any number on the ward map, is not a compliance with the statute.

There must be a real ward map number given, and this necessitates a map; without a map there can be no map number; and in this case the assessment record for 1874 and 1875 failed to describe the property as required by the statute. This invalidates the tax. A substantial compliance in the measures preliminary to taxation in all matters which are of the substance of the procedure, and designed for the protection of the tax-payer, is a condition precedent to the legality and validity of the tax (*Westfall* v. *Preston*, 49 N. Y. 349; *Newell* v. *Wheeler*, 48 N. Y. 486; *Chapman* v. *Brooklyn*, 40 N. Y. 372; *Tallman* v. *White*, 2 N. Y. 66; *Sharp* v. *Speir*, 4 Hill 76; *Same* v. *Johnson*, Id. 92).

The argument on behalf of the corporation is that, notwithstanding the absence of any map showing the new lot by a ward number, the owner should have examined the record of assessments, where he would have seen that his old lots had been assessed in 1874 and 1875, as lots of the depth of eighty feet only, instead of one hundred feet, and would then have had notice that a separate assessment had been made of the remaining twenty feet; that by looking down the column of assessments he would have seen a parcel described as a lot $20 \times 56^{10}$, with a house on it $20 \times 42$, and these dimensions, being identical with his new lot, would have been notice to him that it was there assessed for taxation.

But to arrive even at a conjecture upon the subject it would be necessary for the owner to make an examination of the roll as to all the pieces of land in that block, and to make a computation of all the dimensions and comparison of every parcel taxed, with the map; and, after all, the result would be mere conjecture that the lot charged to John Fay, as owner, was intended for his lot.

But does the law contemplate the payment of taxes upon conjecture and uncertainty as to the identity of the parcel described on the roll? Clearly not, since the first requisite of a valid tax is security to the tax-payer in making his payment, and there can be no security where there is conjecture and uncertainty in respect to the identity of the lot. In the matter of location there must be substantial compliance with the statute which requires that the street and ward map number shall be given. If neither be given, or both be false, there is no compliance whatever with the law.

The relief prayed for by the complaint should be granted.

Judgment for plaintiff.