MARY E. WILSON, PLAINTIFF IN ERROR, V. BUTLER COUNTY, DEFENDANT IN ERROR.

[FILED JUNE 13, 1889.]

1. **Taxes**: VOID SALE. Where a county treasurer sells lands for taxes which were not liable to taxation, and upon which no taxes were due, the tax purchaser may recover from the county the amount paid by him, with interest thereon.

2. ——: ——: LIABILITY OF COUNTY. Where a county has caused land which is not taxable to be assessed and taxes levied thereon under which the land is afterwards sold and attempted to be conveyed, and the county from year to year afterwards causes said land to be assessed and taxes levied thereon, the tax purchaser may pay such taxes to protect his supposed lien, and, upon the failure of his interest in the land, may recover the amount he has so paid, with interest thereon, from the county.

3. ——: ——: ——. Where a county has caused certain real estate to be assessed, and taxes to be levied thereon, a tax purchaser may presume that the property was taxable, and is not required to make a further examination of that fact as a condition of maintaining an action against the county for the purchase money, and interest, and taxes thereafter paid to protect the tax lien which was believed to exist.

ERROR to the district court for Butler county. Tried below before POST, J.

*Waldo Bros.*, for plaintiff in error, cited: *Schoenheit v. Nelson*, 16 Neb. 237; *Roberts v. Adams County*, 20 Id. 411; *City of Indianapolis v. McAvoy*, 86 Ind. 589; *Merriam v. Otoe County*, 15 Neb. 416.

*Geo. P. Sheesley*, for defendant in error.

MAXWELL, J.

This is a proceeding in error to reverse the judgment of the district court of Butler county. The case was submitted to the court below on the petition and answer, and judgment was rendered in the plaintiff's favor for $74.17. The answer admits the allegations contained in the petition, "except the inferences and conclusions of law." It is alleged in the petition:

"1. That on or about the first Monday in February, 1873, the county commissioners of defendant furnished the assessor of Ulysses precinct of said defendant, a list of land which they represented to be taxable in said precinct; that said list wrongfully and erroneously contained the south half of the southeast quarter and the northeast quarter of the southeast quarter of section twenty-eight, in township thirteen north, of range two east, of the sixth principal meridian, in Butler county, Nebraska; that said assessor did value said lands, and returned said valuation with that of other lands, on or about the second Monday in April, 1873,

to the county clerk of said defendant; that on or about the first Monday of July, 1873, the county commissioners of defendant did levy taxes for the year 1873 on all taxable property in said Butler county, by mistake, and erroneously and wrongfully, including with said taxable property the aforesaid land; that said county clerk wrongfully and erroneously extended the taxes for the year 1873 against said land as follows, to wit, total $9.40; that on the 1st day of May, 1874, said taxes for 1873 not having been paid, the same became delinquent; that on or about the first Monday in February, 1874, the county commissioners of defendant furnished the assessor of Ulysses precinct of said defendant a list of the lands which they represented to be taxable in said precinct; that said list, by mistake, and erroneously and wrongfully, contained said above-described land; that said assessor did value said lands and returned said valuation with that of other lands on or about the second Monday in April, 1874, to the county clerk of said defendant; that on or about the first Monday in July, 1874, the county commissioners of defendant did levy taxes for the year 1874 on all taxable property in said Butler county, by mistake, and erroneously and wrongfully, including with said taxable property the aforesaid lands; that said county clerk of defendant, by mistake, and erroneously and wrongfully, extended the taxes for the year 1874 against said land as follows, to wit, total $16.99; that on the first day of May, 1875, said taxes for the year 1874 not having been paid, the same became delinquent; that on the first Monday in September, 1875, said taxes for the years 1873 and 1874 still remaining unpaid, said land was, by mistake, and erroneously and wrongfully, offered for sale by the treasurer of defendant, and on September 6, 1875, was, by mistake, and erroneously and wrongfully, sold by the treasurer of defendant to one F. A. Osborn for said delinquent taxes for the years 1873 and 1874, for the sum of $28.15, which sum of $28.15 the said F. A. Osborn paid

said treasurer therefor, that being the amount of taxes, interest, and legal expenses, claimed by the said treasurer of defendant to be due against said land for the years 1873 and 1874; that there was no tax due against said land at the time of said sale and purchase for the reason that said land at the time it was so assessed, and at the time of said levy and sale, was land belonging to the United States, and not liable to taxation; and that said land was, by mistake, and erroneously and wrongfully, placed upon said tax lists for 1873 and 1874 by defendant's commissioners and defendant's assessors; that taxes for the years 1873 and 1874 were by defendant's commissioners wrongfully levied against said land; that said taxes for the years 1873 and 1874 were by defendant's county clerk, by mistake, erroneously and wrongfully, extended against said land; and that said land was by defendant's treasurer, by mistake, and erroneously and wrongfully, sold for taxes for the years 1873 and 1874, said land being at all the aforesaid times United States government land, and not liable to taxation.

" 5. That said land was by defendant again, by mistake, and wrongfully and erroneously, assessed and taxed in the aforesaid manner, for the year 1875, and while said land still remained United States government land, and not taxable, said F. A. Osborn, to protect his said supposed tax title and lien, as compelled and required by law, paid, on May 5, 1876, to defendant's treasurer, as subsequent taxes on said land for the year 1875, the sum of $23.92.

" 6. That said land was by defendant again, by mistake, and wrongfully and erroneously, assessed and taxed in the aforesaid manner for the year 1876, and while said land still remained United States government land, and not taxable, and said F. A. Osborn, to protect his said supposed tax title and lien, as required and compelled by law, paid, on May 30, 1877, to the defendant's treasurer, as subsequent taxes on said land for the year 1876, the sum of $16.42.

" 7. That on or about the 8th day of May, 1878, the said

F. A. Osborn did sell, assign, and transfer, his certificate from defendant's treasurer of said tax sale and purchase, with all rights thereunder, unto one Charles L. Flint.

"8. That on or about the 8th day of May, 1878, the treasurer of defendant for and on account of said tax sale and purchase, did erroneously and wrongfully convey said land by tax deed unto said Charles L. Flint, which deed is recorded in book VII of deeds, at page 23, in the office of the clerk of said Butler county; that said Charles L. Flint and wife, by deed duly executed and acknowledged and recorded in said county clerk's office in book VII of deeds, at page 459, granted and conveyed unto one Elizabeth Murphy all their right and title to said land, and said tax title, and all rights thereunder; that said land was by defendant again, by mistake, and wrongfully and erroneously, assessed and taxed in the aforesaid manner, for the years 1877, 1878, and 1879, and while said land still remained the property of the United States, and not taxable, and said Elizabeth Murphy, to protect her said supposed tax title and lien, as compelled under the requirements and provisions of law, paid to defendant's treasurer as subsequent taxes on said land on November 17, 1880, the sum of $34.09 taxes for the year 1877; also the further sum of $23.57 taxes for the year 1878; and also the further sum of $32.35 taxes for the year 1879.

"11. That said Elizabeth Murphy and husband, for the consideration of $1,200, by deed, duly executed, acknowledged, and recorded, in said county clerk's office, in book X of deeds, at page 487, granted and conveyed unto Mary E. Wilson, the plaintiff, all right and title to said land and to said tax title, and all rights thereunder; that said land was by defendant again, by mistake, and wrongfully and erroneously, assessed and taxed in the aforesaid manner, for the years 1880 and 1881, and while said land still remained the property of the United States, and not taxable, and said Mary E. Wilson, the plaintiff, to protect her supposed

tax title and lien, as compelled under the requirements and provisions of law, paid the defendant's treasurer, as subsequent taxes on said land, on August 31, 1880, the sum of $21.15, taxes for the year 1880, and on June 24, 1882, the further sum of $25.35, taxes for the year 1881 ; that defendant by the aforesaid various assessments, levies of taxes upon and sale of said land for taxes, held out and represented said land to be, at the times aforesaid, taxable, and that it, the defendant, would give unto the purchaser, at said sale, and unto his assignees and legal representatives, a good and valid title and lien on said land for the purchase money paid defendant, and for all subsequent taxes paid to defendant by said purchaser, his assignees or legal representatives, under said tax sale and title; that all the aforesaid payments to defendant of taxes on said land were made by plaintiff and the aforesaid various persons whose rights plaintiff has acquired, to and for the use of defendant, by reason of the reliance of plaintiff and said various persons upon the said various representations of defendant, and under and by reason of mistake of fact, to wit, under belief that said land was taxable, caused by said representations of defendant, and by reason of said wrongful and erroneous acts of defendant and its officers; that the United States circuit court for the district of Nebraska, in a suit then therein pending, wherein Robert Blair, patentee of said land, was plaintiff, and Mary E. Wilson, this plaintiff, was defendant, decided that said land at the various times of aforesaid attempted taxations, was the property of the United States, and not taxable by this state nor the defendant herein ; that plaintiff's aforesaid tax title was void and of no effect as against said land; and on February 27, 1884, rendered judgment ejecting this plaintiff from said land ; that this plaintiff appealed from said judgment of ejectment to the supreme court of the United States, and that said appeal was by said supreme court of the United States dismissed, and this plaintiff ejected and put out of possession of said land."

Sec. 71 of the revenue law of 1869 (Gen'l Stat. 924) provides: "When, by mistake, or wrongful act of the treasurer or other officer, land has been sold contrary to the provisions of this act, the county is to save the purchaser harmless by paying him the amount of principal and interest to which he would have been entitled had the land been rightfully sold, and the treasurer, or other officer, and their sureties, shall be liable for the amount, on their bonds to the county; or the purchaser may recover the amount directly from the treasurer, or other officer, making such mistake or error."

In 1879 the section was changed to read as follows: (sec. 131, art. 1., chap. 77, Comp. Stat.) "When by mistake or wrongful act of the treasurer, or other officer, land has been sold on which no tax was due at the time, or whenever land is sold in consequence of error in describing such land in the tax receipt, the county is to hold the purchase[r] harmless by paying him the amount of principal and interest and costs to which he would have been entitled had the land been rightfully sold, and the treasurer or other officer, and their bondsmen, will be liable to the county to the amount of their official bond; or the purchaser, or his assignee, may recover directly of the treasurer, or other officer, in an action brought to recover the same in any court having jurisdiction of the amount, and judgment shall be against him and his bondsmen; but the treasurer, or other officer, and their bondsmen, shall be liable only for their own and deputies' acts."

It will be observed that both sections provide for repaying the purchaser at tax sale, the money which he has paid, with interest thereon and costs, where the land has been sold for taxes, where no taxes were due thereon. (*Roberts v. Adams Co.*, 18 Neb. 471; *Roberts v. Adams Co.*, 20 Id. 409.) The attorney for Butler county concedes that the county is liable for the amount paid for the tax purchase of the land, but contends that the county is not liable

for taxes thereafter voluntarily paid on such land. A party having a lien on real estate, or having reason to believe that he has such lien, by paying taxes to protect the same, cannot be said to have made such payments voluntarily, so as to preclude a recovery. The purpose is to protect his interest, as, if he failed to do this, the land would, in all probability, be sold, and his security be clouded or lost. This rule is constantly applied in cases of foreclosure of mortgage, and the courts have even given the mortgagee who paid taxes to protect the security, a right over prior incumbrancers whose liens the payment served to protect. (*Cook v. Kraft,* 3 Lans. 512; *Davis v. Bean,* 114 Mass. 360; *Barthell v. Syverson,* 54 Iowa, 160; 2 Jones on Mortgages sec. 1134.) This principle is distinctly recognized in *Young v. Brand,* 15 Neb. 601; *Southard v. Dorrington,* 10 Id. 122, and cases cited; and *Johnson v. Payne,* 11 Id. 271.

In *Schoenheit v. Nelson,* 16 Neb. 235, the question here presented was before the court, and it was held that a purchaser at tax sale may pay all taxes thereafter accruing which are legally chargeable against the land purchased and add the same to his claim in the enforcement of his lien.

The attorney for the county contends that as these taxes were not legally chargeable against the land, therefore the plaintiff and his grantors paid the same at their peril; and as the land was not taxable, that therefore there was no valid charge against the same, and there can be no recovery. We do not so understand the law. The objection is not to the validity of the taxes if levied on taxable real estate, but that they were levied on property which was expressly excepted by the constitution from taxation. The county caused the property to be assessed from year to year and levied taxes thereon, and held it out to the world as being taxable, and extended it on its record as such, and that certain taxes were due thereon which its treasurer from year to year received. The tax purchaser has a right to assume that the records of the county state the facts as they

actually exist, and rely upon them, and is not compelled to look elsewhere for evidence of their veracity. With what consistency can the county say in effect, "I assessed property and levied taxes thereon which you paid, and the money is now in the county treasury; but no taxes were due on such land, and you should not have paid the same, and having done so you must suffer the loss"? Such an answer would not avail between individuals, and should not be tolerated. The same rule of justice which prevails between natural persons, ought to obtain in dealing with corporations. The fact that the defendant is a county affords no justification for it to retain what it has no legal nor moral right to keep.

The case is entirely different from that of a tax payer who voluntarily pays a questionable tax without objection. In such case there can be no recovery because the party waives the objection by deliberately paying the amount claimed. He may have an object in this. The questionable tax may be of general benefit to the tax-payers of the county by reason of some great work of a public nature, the effect of constructing which would be to enhance the value of all the property within the county and add largely to its revenues. Or it may be that the tax in itself is just, although subject to attack from a legal standpoint. In either case the tax payer who voluntarily pays the amount charged against his property, thereby in effect admits its validity, and ordinarily cannot recover it back. The law for the protection of tax purchasers, however, is designed as an inducement to those who may purchase real estate upon which taxes are delinquent, by guaranteeing to them at least a repayment of the purchase price and interest, in case the title to the property and lien of the tax thereon fail from any cause; and so well has the law operated that taxes as a rule everywhere in the state are promptly paid, the delinquent list being of but small proportions, while no person has been robbed of valuable property for a trifle.

But no county will be permitted to retain money collected as in the case at bar, to which it has no lawful or equitable right.

The judgment of the district court is reversed so far as the taxes paid by the plaintiff and her grantors to protect their supposed title and lien are concerned; and judgment will be entered in this court for the amount paid prior to September 1, 1879, with twelve per cent interest thereon to that date, and ten per cent since that time; and for the amounts paid as above since September 1, 1879, with ten per cent per annum.

JUDGMENT ACCORDINGLY.

THE other Judges concur.