AMES C. PENNOCK, APPELLANT, V. DOUGLAS COUNTY
ET AL., APPELLEES.

FILED FEBRUARY 7, 1894.    No. 5124.

Taxation: SALE OF LAND NOT SUBJECT TO ASSESSMENT: RE-
COVERY OF PURCHASE MONEY: CITIES. In the absence of an
express statutory mandate, a city of the metropolitan class can-
not be compelled, either at law or in equity, to refund money
received by it from a purchaser of real estate at a sale made
thereof by the county treasurer, for the purpose of collecting a
special assessment or tax levied against such real estate by said
city and for which special assessment or tax said real estate was
not liable. The rule *caveat emptor* applies with full force to such
a purchaser.

APPEAL from the district court of Douglas county
Heard below before WAKELEY, J.

*Henry W. Pennock,* for appellant.

*W. J. Connell* and *A. J. Poppleton, contra.*

See opinion for authorities cited.

RAGAN, C.

Ames C. Pennock brought this suit in the district court
of Douglas county against the city of Omaha, the county
of Douglas, and John Rush, the treasurer of Douglas
county. The county interposed a demurrer to Pennock's
petition on the ground, generally, that it did not state facts
sufficient to constitute a cause of action, and, specially, that
it appeared from Pennock's petition that the claim sued for
therein had been by him presented to the board of super-
visors of Douglas county and by them rejected, and that
he had not prosecuted an appeal from the order of said
supervisors rejecting said claim. The city of Omaha also
demurred to Pennock's petition on the ground that the

same did not state a cause of action. There was no appearance by or service upon Rush. The district court sustained the demurrers and dismissed Pennock's case, and he comes here on appeal. His counsel thus states the facts in this case:

"The petition alleges for first cause of action that in the year 1883 the city counsel of the city of Omaha created, by ordinance, paving district No. 6, comprising a portion of St. Mary's avenue in said city; that in the year 1884 said city council passed an ordinance providing for the curbing and guttering of said street in said paving district and levied a tax upon the abutting property to pay for the same; that in the same year said city council passed an ordinance providing for the paving of said avenue in said paving district and levying a paving tax upon the abutting property to pay for the same; that lot eight in block two, in Kountze & Ruth's addition to the city of Omaha, was levied upon for said purpose, and the city treasurer was directed to collect said special assessments as other taxes; that in September, 1885, said city treasurer certified to the county treasurer of Douglas county the amount of said special assessments which were then due and delinquent upon said lot, and said county treasurer, after advertising the same in the manner provided by law, sold said lot to the plaintiff at private tax sale on the 28th day of December, 1885; that the plaintiff received of said treasurer a certificate of tax sale in the usual form; that the plaintiff paid to the county treasurer the full amount of said special assessments and interest, amounting to $45.98.

"Some time after said tax sale to the plaintiff, the owner of said lot, with other adjacent property holders, applied to the city council by written petition for relief against said special assessments, on the ground that the same were illegal and void; that said council refused to grant the relief asked; that on the —— day of September, 1887, and

more than three months before the time of redemption had expired, the plaintiff served the notice required by section 123 of the revenue law for the taking out of a tax deed; that after serving of said notice and before two years from tax sale had expired, the owner of said lot applied to the district court of Douglas county for a perpetual injunction, restraining the collection of said special assessments and any further proceedings under said sale; also praying that said assessments be adjudged illegal and void and no lien upon said lot.    On the 20th day of December, 1888, final decree was rendered in said cause granting the request of said plaintiff and perpetually enjoining plaintiff herein from enforcing his tax sale against said property, and declaring that said special assessments were illegal and void and no lien upon said lot; that no appeal has ever been taken from said decree and the same is in full force and effect and that plaintiff's consideration at said tax sale has wholly failed; that afterwards the plaintiff applied to the county commissioners of Douglas county for repayment of the money expended at said sale, which was by said commissioners refused; that afterwards the plaintiff applied to the city council of the city of Omaha likewise for a reimbursement of the money so expended at said tax sale, which was by said city council refused; that plaintiff had used due care and diligence in the purchase of said lot for taxes, and had no means of knowing or reason for suspecting that said lot was not legally and properly assessed for said improvements, and that, through the representations of the city and its officers, he had been induced to purchase at said tax sale; that by reason of the illegal acts of the city in the premises, the consideration for said sale had entirely failed; that the city council has authority, under a special clause of the statute, to make a supplemental assessment and levy upon the property abutting on St. Mary's avenue, to correct any error, omission, or mistake in the first assessment or levy, and that said city may thus fully reimburse itself in the premises.

"Second, third, and fourth causes of action contain similar allegations with reference to adjacent lots bought by the plaintiff for the same special assessments at the same date and under the same conditions.

"Prayer: (1) That the county of Douglas be required to refund to the plaintiff the amount so paid at said void tax sale with interest; (2) that in case said county be held not liable, that John Rush, the then county treasurer of said county, who made said illegal sales, be required to pay said amount with interest; (3) that in case neither the county of Douglas nor John Rush be held liable, the city of Omaha be adjudged to be liable to the plaintiff as for money had and received from the plaintiff; that, in that case, the city be adjudged to pay to the plaintiff the amount so paid by the plaintiff, with interest at the rate of seven per cent per annum, and for such other relief as may be in accordance with equity and justice."

If appellant's claim is one for which Douglas county was liable, then, to entitle him to recover against the county he should have filed such claim with its county clerk, had it passed upon by the county board of supervisors, or commissioners, and appealed from their decision, if the same was unsatisfactory, to the district court. In no other manner could the district court acquire jurisdiction of a suit against the county, founded on such a claim as the one sued on here by the appellant. (Sec. 37, ch. 18, Comp. Stats., 1893; *Brown v. Commissioners of Otoe County,* 6 Neb., 111; *State v. Commissioners of Buffalo County,* 6 Neb., 454; *Commissioners of Dixon County v. Barnes,* 13 Neb., 294; *Richardson County v. Hull,* 24 Neb., 536.) Appellant alleged that he duly filed his claim against Douglas county and that it was rejected by the supervisors, or county commissioners thereof; but it does not appear from the record before us that appellant has ever appealed from the order rejecting his claim, much less that the present suit is a prosecution of such an appeal. The judgment of

the district court, then, dismissing appellant's suit against Douglas county, was right. It may be that Douglas county would have been liable for appellant's claim had he pursued the remedies provided by the statute. (Sec. 131, ch. 77, Comp. Stats., 1893; *Richardson County v. Hull*, 24 Neb., 536; *Roberts v. Adams County*, 18 Neb., 471; *Wilson v. Butler County*, 26 Neb., 676.) But that question is not before us and we express no opinion on the point.

The question presented by this appeal is: In the absence of an express statutory mandate, can a city of the metropolitan class be compelled to refund money received by it from a purchaser of real estate at a sale made thereof by the county treasurer for the purpose of collecting a special assessment or tax levied against such real estate by said city, and for which special assessment or tax said real estate was not liable? The learned counsel for appellant contends that the rule *caveat emptor* does not apply to such a purchaser, and in support of this contention, and that the question stated above should be answered in the affirmative, has furnished us an able and exhaustive brief and argument in which he has cited many authorities. We have carefully examined all the cases cited by him, and it is not to be denied that the contention of counsel is supported by the decisions of courts whose opinions are entitled to much weight.

The rule contended for by appellant seems to be the doctrine of the supreme court of Iowa. In *Corbin v. City of Davenport*, 9 Ia., 239, it is said: "The purchaser at an invalid sale of property by a city for taxes may recover of the city the amount of purchase money paid and interest." It does not appear from the opinion that it was predicated upon a statute making cities liable in such cases. Such, also, seems to be the rule in Wisconsin. In *Norton v. Supervisors*, 13 Wis., 684, it is said: "Where a tax sale is void the county is liable to the holder of certificates issued on such sale for the amount paid with interest.

*  *  *  The statute makes it the duty of the treasurer
to refund the money in such case on demand to the pur-
chaser or his assigns; but the liability of the county does
not depend upon this statute, and whatever remedy it gives
is cumulative to the right of the action for money had and
received." This case was cited with approval in *Van Cott
v. Board of Supervisors*, 18 Wis., 259.

In *Chapman v. City of Brooklyn*, 40 N. Y., 372, the
city of Brooklyn caused an assessment to be levied upon
certain lots to pay the expense of grading and paving a
certain avenue. The admitted benefits of this improve-
ment to the two lots were assessed against parties who
were not the owners of them. By the law in force in such
cases, judgment for the amount of the assessment was
rendered against the persons so assessed; executions issued
on such judgment, and returned unsatisfied. The lots were
then put up for sale by the street commissioner, and sold
to a purchaser, who paid over the amount of the bid, and
received the certificate of sale. The money was trans-
mitted by the street commissioner to the city treasurer.
An action was then brought against the city by the assignee
of this certificate to recover back the money paid, on the
ground "that the assessment proceedings were absolutely
void for want of jurisdiction, the assessment not having
been made against the owner of the lots." The court held
that the assessment was void because not made against the
owner of the lots, and, by a divided court, "that the plaint-
iff could recover on the ground of an entire failure of the
consideration."

In *Phillips v. Mayor and Council of City of Hudson*, 31
N. J. Law, 143, the court said: "Where there was a sale
[of real estate] to pay for an improvement in the city of
Hudson, and a declaration of sale delivered in pursuance
of a void ordinance, held, that the purchase money could
be recovered back in an action of assumpsit" against the
city. This case was also decided by a divided court.

The foregoing are all the authorities cited by counsel for the appellant which can be said to be squarely in point and support his views.   Counsel, however, refers us to the following: *Pettit v. Black*, 8 Neb., 52, *Read v. Merriam*, 15 Neb., 323, and *Merriam v. Hemple*, 17 Neb., 345, as authority for the doctrine for which he argues.   These cases, however, do not support appellant's contention.   In each of these cases, while the tax deeds which the purchaser obtained at the tax sale were wholly void, the taxes for which the property was sold were valid liens on the property, and furthermore, the decisions in these cases were based on a statute.   Counsel also cites us to *Wilson v. Butler County*, 26 Neb., 676; but this was a suit by Wilson against the county, and the opinion is predicated on a statute.   Another Nebraska case cited by counsel is *Clark v. Board of County Commissioners of Saline County*, 9 Neb., 516.   In that case Saline county conveyed a tract of land to one Hunt and paid him $500 in money, in consideration of which Hunt agreed to build a bridge across the Blue river.   Hunt. assigned his contract to Clark and conveyed him the land.   Clark built the bridge and the county accepted it.   The title to the lands having failed, Clark sued the county for the value of the bridge, and the court held that he was entitled to recover.   But there is a wide distinction between the legal status of a purchaser of property sold at a tax sale and that of one who builds an improvement for a county and receives land or other property in payment for such improvement, the title to which fails.   Appellant's case is not within the principles of the case just cited.

*Pimental v. City of San Francisco*, 21 Cal., 352, *Taylor v. People*, 66 Ill., 322, *Louisiana v. Wood*, 102 U. S., 294, and *Chapman v. County of Douglas*, 107 U. S., 48, also cited by appellant's counsel, are analogous in principle to *Clark v. Board of County Commissioners of Saline County*, *supra*, and need not be further noticed.

As opposed to the rule contended for by appellant's counsel are *Lynde v. Inhabitants of Melrose*, 92 Mass., 49, where it is said : "If a tax title proves invalid, the purchaser at the collector's sale cannot maintain an action against the town to recover back the money paid by him as the consideration of the purchase.  *  *  *  No precedent for maintaining such a suit is found, and the plaintiff's counsel rests his argument solely upon the ground that the defendants have received the amount of the tax without consideration.  *  *  *  There is a plain distinction between the right of a person to recover from the town the amount of a tax unlawfully assessed upon him and the claim of the purchaser under a collector's deed whose title proves defective.  *  *  *  The purchaser is a mere volunteer in the payment of the tax.  He has the same means of knowing whether it is legally assessed as the town has. He buys the title without warranty except such covenants as he takes from the collector, and he must rely only upon them.  Beyond those covenants, his deed is in the nature of a mere quitclaim for which he has paid what he thought the chance was worth.  His speculation may prove very profitable, or wholly unproductive; but no one has taken his property without his consent or with any contract, expressed or implied, to reimburse him if his bargain proves a losing one."

Such is the rule in the state of Indiana.  In *Churchman v. City of Indianapolis*, 110 Ind., 259, it is said : "Money voluntarily paid on a demand in the nature of a tax—and a street improvement assessment is such—cannot be recovered back in the absence of an express statutory provision authorizing such a recovery.  The doctrine of *caveat emptor* applies as fully to sales upon assessments for street improvements as to any other analogous class of sales.  A recital in a deed executed by a city treasurer upon the sale of lands in satisfaction of an assessment for a street improvement that ' it appearing from the records of the com-

mon council of said city, in the city clerk's office, that the
aforesaid lands were legally liable for such assessment,' is
not a representation of fact upon which the grantee had a
right to rely." To the same effect see *State v. Casteel*, 110
Ind., 174; *Worley v. Town of Cicero*, 110 Ind., 208;
*Board of Commissioners v. Armstrong*, 91 Ind., 528; and
the *City of Logansport v. Humphrey*, 84 Ind., 467, where
it is said: "The purchaser at a city tax sale assumes all
risks, and if the sale proves invalid, has no remedy against
the municipality."

This also seems to be the rule at present in New Jersey.
In *Casselberry v. Piscataway*, 43 N. J. Law, 353, it is
said: "A municipality is not bound to refund the purchase
money received on a tax sale merely because there has been
illegality in the proceedings which defeats the title of the
purchaser,  *  *  *  the rule of law applicable to such
a case is that the municipality is under no obligation to
refund the purchase money, because the tax title fails. The
purchaser is a volunteer and buys at his own risk."

This also seems to be the doctrine in California. In
*Loomis v. Los Angeles County*, 59 Cal., 456, it is said:
"In an action against a county to recover purchase money
paid by the plaintiff at a void tax sale there is no rule of
law authorizing plaintiff to recover." (See also *Harper v.
Rowe*, 53 Cal., 233.)

This also seems to be the rule in New York, notwith-
standing the case of *Chapman v. City of Brooklyn, supra.*
(See *Swift v. City of Poughkeepsie*, 37 N. Y., 511; *Phelps
v. Mayor of New York City*, 112 N. Y., 216.)

Such is the rule in Kansas. In *Sullivan v. Davis*, 29
Kan., 28, it is said: "The rule *caveat emptor* is, except as
limited or qualified by express provisions of statute, uni-
versally applicable to all purchasers at tax sales." (See also
*Board of Commissioners v. Geis*, 22 Kan., 381; *Sapp v.
Commissioners of Brown County*, 20 Kan., 243; *Commis-
sioners of Wabaunsee County v. Walker*, 8 Kan., 431; *Phil-*

*lips v. Board of Commissioners of Jefferson County,* 5 Kan., 412.)

In *San Francisco & N. R. Co. v. Dinwiddie,* 13 Fed. Rep., 789, it is said: "An assessment made in strict accordance with the provisions of the state constitution relating to the assessment of railroad property, which violates the provisions of the fourteenth amendment to the constitution of the United States, is void. A payment under it is not a payment under duress, but is voluntary and cannot be recovered."

In Cooley, Taxation [1st ed.], 328, it is said: "A tax sale is the culmination of proceedings which are matters of record; and it is a reasonable presumption of law that where one acquires rights which depend upon matters of record, he first makes search of the record in order to ascertain whether anything shown thereby would diminish the value of such rights or tend in any contingency to defeat them. A tax purchaser consequently cannot be, in any strict technical sense, a *bona fide* purchaser, as that term is understood in the law, because a *bona fide* purchaser is one who buys an apparently good title without notice of anything calculated to impair or affect it; but the tax purchaser is always deemed to have such notice when the record shows defects. He cannot shut his eyes to what has been recorded for the information of all concerned and, relying implicitly on the action of the officers, assume what they have done is legal because they have done it. It is, indeed, a presumption of law that official duty is performed; and this presumption stands for evidence in many cases, but the law never assumes the existence of jurisdictional facts; and throughout the tax proceedings the general rule is that the taking of any one important step is a jurisdictional prerequisite to the next; and it cannot therefore be assumed because one is shown to have been taken that the officer performed his duty in taking that which should have preceded it."

In Desty, Taxation, p. 850, it is said: "Except as limited and qualified by express statutory provisions, the rule [*caveat emptor*] applies to all purchasers at tax sales; and if the public has nothing to sell, the purchaser gets nothing. Purchasers are bound to know, at their peril, that the supposed delinquent is in fact delinquent,—that he has been lawfully assessed, and has failed to make payment. * * * The purchaser at a municipal sale for taxes buys at his own risk, and at his peril investigates the proceedings. A county does not guaranty tax titles except as the statute may provide, and cannot refund money upon the failure of such titles."

We are urged by counsel for appellant to hold the city of Omaha liable in this case upon moral grounds, but we cannot do so. The city did not ask appellant to purchase at its tax sales. He was a volunteer, with all that that term implies. He bought without warrant or covenant of any kind and bid what he considered the venture worth; and under these circumstances and in a case like the present, where there was no fraud, no misrepresentation, and no mistake of the facts, it is well settled, as between individuals, that the purchaser is without remedy in case of failure of title. (Rawle, Covenants for Title, sec. 321, and cases there cited.) In this case appellant knew when he made the purchase that in case of redemption he would receive a return on his investment unusually large. If the owners of the property failed to redeem the same, he could, under the statute, foreclose his lien and obtain title to valuable property for a very small part of its actual worth. Appellant claims that he should be given all these advantages for unusual profits, but at the same time he should be fully indemnified against any risk of loss. In no other line of business, under no other circumstances, would such a claim be made. In the interest of the public revenue and as an inducement to buy at tax sales, our law presents tempting offers to the speculator; but until the legislature

shall so expressly declare, the courts will not place the responsibility upon cities of refunding money paid by purchasers for property at sales made thereof for taxes. (*Budge v. City of Grand Forks*, 47 N. W. Rep. [N. Dak.], 390.)

A consideration of the authorities reviewed above leads us to the conclusion that the rule *caveat emptor* applies with full force to purchasers of property at tax sales, and constrains us to the conclusion that in the absence of a statute therefor, no municipality can be compelled, either at law or in equity, to refund money which it has received from the sale of real estate for taxes, even in cases where the property against which such taxes were levied was not liable therefor. The decree appealed from must be

AFFIRMED.