Filed March 31, 1887.

---

13,377.

## Churchman et al. *v.* The City of Indianapolis.

City.—*Assessment for Local Improvement.*—*Power to Levy.*— *When Void.*—A
city has no power to make an assessment for local improvements except
such as is conferred by its charter, and any substantial departure from
the mode of proceeding prescribed by the statute will vitiate the assess-
ment.

Same.— *Street Improvement Assessment.* — *Voluntary Payment.* — *Recovering
Back.*—Money voluntarily paid on a demand in the nature of a tax—
and a street improvement assessment is such—can not be recovered

back in the absence of an express statutory provision authorizing such a recovery.

SAME.—*Erroneous or Wrongful Assessment.*—There is no statute which authorizes the refunding by a city of money voluntarily paid upon an erroneous or irregular, or even wrongful, assessment for the improvement of a street.

SAME.—*Sale Upon Assessment.*—*Caveat Emptor.*—The doctrine of *caveat emptor* applies as fully to sales upon assessments for street improvements as to any other analogous class of sales.

SAME.—*Deed.*—*Recital.*—*Representation.*—*Legal Conclusion.*—A recital in a deed, executed by a city treasurer upon a sale of lands in satisfaction of an assessment for a street improvement, that " it appearing from the records of the common council of said city, in the city clerk's office, that the aforesaid lands were legally liable for such assessment," is not a representation of fact upon which the grantee had a right to rely.

STATUTE OF LIMITATIONS.—*Trusts.*—*Equity.*—It is only direct trusts, sought to be enforced in and exclusively cognizable by courts of equity, to which the statute of limitations can not be interposed as a defence.

SAME.—*Public Officer.*—*Receipt of Money under Claim of Right.*—*Action.*—The mere receipt of money, under a claim or color of right, by a public officer, for the recovery of which an ordinary action will lie, does not constitute him a trustee in such a sense as to preclude the defence of the statute of limitations.

SAME.—*Concealment of Cause of Action.*—The concealment of a cause of action, to take it out of the operation of the statute of limitations, must consist of some affirmative act or line of conduct. A mere passive silence respecting a matter which is equally open to and within the reach of all who have an interest in it, is not sufficient.

From the Marion Superior Court.

*J. S. Tarkington,* for appellants.

*W. L. Taylor, C. S. Denny* and *S. J. Peelle,* for appellee.

NIBLACK, J.—This was an action by Francis M. Churchman and Stoughton J. Fletcher against the City of Indianapolis, to recover back the purchase-money paid by or for them as purchasers of a lot in that city at a sale made for assessments charged against it on account of certain street improvements ordered by the common council, upon the alleged ground that the sale was void.

The defendant answered in three paragraphs, the first be-

ing in general denial, and the second and third setting up in different forms the six years' statute of limitations.

To the second and third paragraphs of answer the plaintiffs replied, first, in denial, and, secondly, a concealment of the cause of action.

The court below, at special term, made an elaborate special finding of the facts, which we compress in as brief a statement as is consistent with a full presentation of the merits of the controversy. It was found:

*First.* That on the 21st day of October, 1874, William Braden was the owner and in the possession of a certain lot in the city of Indianapolis; that on that day the said Braden, together with his wife, executed to Edward Hagar a mortgage on that lot to secure the payment of a note for the sum of five thousand dollars, bearing the same date, and payable one year thereafter, at Fletcher's bank, in said city.

*Second.* That said mortgage was recorded in due time, and it and the note it was given to secure were, in September, 1875, by his endorsement, assigned by Hagar to S. A. Fletcher & Co., a firm composed of Stoughton A. Fletcher and the plaintiff Churchman; that said note, which remained unpaid, and said mortgage, continued to be held by S. A. Fletcher & Co. until the 6th day of February, 1882, when the said Stoughton A. Fletcher assigned and transferred to the plaintiff Stoughton J. Fletcher all his interest in the property and assets of said firm, including said note and mortgage.

*Third.* That, for more than twenty years previous to the commencement of this suit, the defendant had been a duly organized city, and was, at the time of the proceedings hereinafter mentioned, an incorporated city under the general laws of this State.

*Fourth.* That on the 26th day of June, 1875, John Knight and others presented a petition to the common council of said city of Indianapolis to have Second street laid out and opened between Pennsylvania and Meridian streets, in said city, to a width of fifty feet, and to adjoin and run along the

north line of the lot mortgaged by Braden and wife as above stated.

*Fifth.* That upon the same day said petition was presented it was, without any previous reference to a committee of that body, or any action or report of any committee thereon, by a resolution of said common council, referred to the commissioners of said city, appointed for that and similar purposes, with instructions to assess the benefits as well as the damages which would accrue to the owners of contiguous lots and lands.

*Sixth.* That said commissioners, on the 26th day of August, 1875, proceeded to examine the lots and lands to be affected by the laying out and opening of said Second street, as prayed for in the petition, and, amongst other things, assessed against the Braden lot the sum of nine hundred dollars as the value of the estimated benefits which would accrue to it from the laying out and opening of such street, and, on the 27th day of September, 1875, made a report of their proceedings to said common council.

*Seventh.* That on the 4th day of October, 1875, the report of said commissioners was adopted by said common council by a vote of two-thirds of its members; that on the 4th day of November, 1875, a certified transcript of such report, and of the proceedings thereon, was duly recorded in the recorder's office of Marion county; that on the 11th day of October, 1875, the clerk of said city delivered a certified copy of the report of said commissioners, and of the proceedings of said common council thereon, to the treasurer of said city, with directions to collect the amounts assessed against the several lots and tracts of land therein described for estimated benefits, including the Braden lot, of which the said Braden was still in the possession as the owner thereof.

*Eighth.* That the city treasurer thereupon demanded of the said Braden the amount so assessed against his said lot.

*Ninth.* That said assessment not having been paid within three months after demand made as above, the city treasurer

advertised said lot for sale to be sold at the city court-room on the 7th day of October, 1876.

*Tenth.* That at the time and place last named, the city treasurer offered said lot for sale at public auction, whereupon the plaintiff Churchman, in his own name, but for the use of the firm of S. A. Fletcher & Co., and to protect the mortgage lien of said firm so obtained by assignment from Hagar, bid for the same the sum of $934.25, being the amount of the assessment against said lot, and of the costs due thereon, and said lot was thereupon struck off and sold to the said Churchman for that sum, which was immediately paid by him to the treasurer, and by the latter at once turned into the city treasury.

*Eleventh.* That afterwards, on the 16th day of October, 1876, the city treasurer executed to Churchman a certificate of the sale, so made to him, which is set out in full in the special finding.

*Twelfth.* That thereafter, on the 17th day of June, 1878, Churchman assigned in writing an undivided one-half interest in said certificate of sale to Stoughton A. Fletcher, herein above named, and on the 20th day of the same month, he and the said Fletcher received a deed from the city treasurer for the lot so purchased by Churchman and described in said certificate of sale, which deed is also set out at length in the special finding, and contains, with other things, a recital that "it appearing from the records of said common council of said city, in the city clerk's office, that the aforesaid lands were legally liable for such assessment," referring to the assessment against the lot described in such deed.

*Thirteenth.* That the first notice which Churchman, or any of his associates in interest, had that there was an unpaid assessment against the lot described in the deed, was on the day of sale, and only a short time before the lot was sold, when the city treasurer informed Churchman that he had a warrant for the collection of such assessment, and that he was about to, and would, sell the lot to pay the same; that

Churchman had necessarily, under the circumstances, to rely upon the inference that such assessment had been lawfully made.

*Fourteenth.* That Braden continued in the exclusive possession of the lot until the time of his death, which occurred during the year 1881.

*Fifteenth.* That neither the plaintiffs nor Hagar, nor the said Stoughton A. Fletcher, ever received notice of the fact that the petition for laying out and opening Second street was never referred to a committee of the common council of the city of Indianapolis, until in the summer of the year 1879.

*Sixteenth.* That said fact was first brought out, and became generally known, through the medium of legal proceedings had in one of the courts of Marion county during the year 1879.

*Seventeenth.* That since said fact had been so brought out and become generally known, the said common council and other city authorities had abandoned all further effort to collect assessments against other lands for benefits on account of the laying out and opening of Second street as herein set forth.

*Eighteenth.* That Braden had notice of the meeting of the city commissioners to assess damages and benefits to result from the laying out and opening of said Second street, but did not appeal from the proceedings making an assessment against his lot for estimated benefits.

*Nineteenth.* That said city of Indianapolis collected other sums assessed for benefits at the same time, which it still retains.

*Twentieth.* That, on the 24th day of July, 1884, the plaintiffs demanded of the said city of Indianapolis the repayment of said sum of $934.25, but repayment was refused.

*Twenty-first.* That this suit was not commenced until the 24th day of October, 1884, when more than six years had elapsed since the payment of said sum of $934.25 had been made to the said city of Indianapolis.

Upon the facts thus found, the court came to the following conclusions of law:

*First.* That the proceedings taken for laying out and opening Second street in the city of Indianapolis were unauthorized and void.

*Second.* That, as a consequence, all the assessments for benefits on account of laying out and opening said Second street were also unauthorized and void.

*Third.* That the city treasurer, as a necessary inference, had no authority to collect any of such assessments, whether by sale of property or otherwise.

*Fourth.* That as the sale was void for want of any authority in the city treasurer to make it, the deed made in pursuance of such sale conveyed no title, either to the purchaser or to his assigns.

*Fifth.* That the city of Indianapolis was, upon demand, liable for the repayment of the sum of $900 paid for the Braden lot at the sale by the city treasurer.

*Sixth.* That the failure of the plaintiffs to commence this suit within six years after the payment of the said sum of $900 to the city, was no bar to the maintenance of this action.

*Seventh.* That the plaintiffs were entitled to recover from the city said sum of $900, with interest from the 24th day of July, 1884, the day on which repayment was demanded, with costs of suit.

Over exceptions reserved to the conclusions of law thus stated, judgment was rendered accordingly in favor of the plaintiffs. Upon an appeal to the general term, this judgment was reversed, and the cause was ordered to be remanded with instructions to render judgment, upon the facts as found, in favor of the defendant. From that judgment of reversal the plaintiffs have appealed to this court.

The first section of the act of May 17th, 1875, provided for the appointment of five commissioners to constitute a body to be known as city commissioners, whose duty it should be to hear and determine all matters appertaining to the lay-

ing out, opening, altering and straightening of the streets and alleys of any city incorporated under the general laws of this State. 1, R. S. 1876, p. 318; R. S. 1881, section 3166. Section 26 of the same act further provided that, "Before any matter of the opening, laying out, or altering of any street, alley, highway, or watercourse, or of the vacation thereof, shall be referred to the city commissioners, the common council shall refer the matter to an appropriate committee, who shall examine the matter, and report at the next meeting of the common council upon the expediency of so referring; and if the common council shall determine, by a two-thirds vote, to submit the said matter to the commissioners, it shall be so ordered, and shall thereupon be referred to said commissioners, as hereinbefore provided." R. S. 1881, section 3167.

Although, as has been seen, the particular reason for holding that the proceedings of the common council in relation to the laying out and opening of Second street were unauthorized and void, was not stated by the court, that holding is sought to be sustained upon the ground that, as shown by the special finding, the petition of John Knight and others, praying for the laying out and opening of such street, was not referred to some committee of the common council before its reference to the city commissioners was ordered. This position is based upon the theory that a reference of the petition to a committee of the common council was a condition precedent to the further jurisdiction of such common council over the subject-matter of the petition, and that by reason of the failure to first so refer the petition in question, all the subsequent proceedings upon it were without authority, and hence void; that as the proceedings which resulted in making the assessment were void for want of jurisdiction in the common council, the sale made to enforce such assessment was also void; that as the sale was void, the city of Indianapolis became the holder of the purchase-money as the trustee of the purchasers, and, in consequence, liable to repay the

same upon demand without reference to the mere lapse of intervening time.

It is true, as contended, that a city has no power to make assessments for local improvements except such as is conferred by its charter, and that any substantial departure from the *mode* of proceeding prescribed by the statute.vitiates such an assessment.

There is, however, at times, much difficulty in distinguishing between provisions which are imperative and those which are directory merely. On that subject, see Dillon Munic. Corp. (3d ed.), section 769, and authorities there cited.

The conclusions we have reached in regard to this case in other respects render it unnecessary for us to consider whether the omission of the common council to first refer the subject-matter of the proposed improvement of Second street to a committee of that body was fatal to its further jurisdiction, or was only an irregularity of which advantage might have been taken upon an appeal, or some other direct proceeding. See, also, 1 R. S. 1876, p. 323, section 14.

It is now definitely settled that money voluntarily paid on a demand in the nature of a tax, as an assessment to promote a street improvement really is, can not be recovered back, except in pursuance of some express statutory provision authorizing such a recovery, and we know of no statute permitting, much less requiring, money voluntarily paid upon either an erroneous or irregular, or even wrongful, assessment for the improvement of a street, to be refunded. *Smith* v. *Smith,* 76 Ind. 236; *Board, etc.,* v. *Graham,* 98 Ind. 279; *State, ex rel.,* v. *Casteel, ante,* p. 174; *Worley* v. *Town of Cicero, ante,* p. 208.

From this it very naturally follows that the doctrine of *caveat emptor* applies as fully to sales upon assessments for street improvements as to any other analogous class of sales. Freeman Executions, sections 301, 335 ; Rorer Judicial Sales, sections 150, 174, 476.

It was held in the case of *Newsom* v. *Board, etc.,* 103 Ind.

526, that it is only to direct trusts, sought to be enforced in, and exclusively cognizable by, courts of equity, to which the statute of limitations can not be interposed as a defence, and that the mere receipt of money under a claim and color of right, by a public officer, does not constitute him a trustee in such a sense as to preclude the defence of the statute of limitations; that, as a consequence, when money can be recovered in an ordinary action, the statute of limitations is a good defence. *Nelson* v. *Board, etc.*, 105 Ind. 287.

Adhering, as we do, to the doctrine of that case, the inference that the six years' statute of limitations was well pleaded in this cause, is inevitable.

As we construe it, there was nothing in the special finding which even tended to establish a concealment of any of the facts relied on by the plaintiffs as sustaining their right to recover in this action. The *concealment* of a cause of action, to take it out of the operation of the statute of limitations, must consist of some *affirmative* act or line of conduct. A merely passive silence does not amount to such a concealment. *Wynne* v. *Cornelison*, 52 Ind. 312; *Jackson* v. *Buchanan*, 59 Ind. 390; *Ware* v. *State, ex rel.*, 74 Ind. 181.

Nothing being found to the contrary, we must assume that a proper record of the proceedings of the common council, under review, was made, and that the record thus made was as open to Churchman as to the city treasurer. At all events, the failure of such treasurer to voluntarily communicate what the record of those proceedings disclosed as affecting the assessment against the Braden lot, did not amount to an *affirmative* act of concealment. A matter can not be said to be concealed which is equally open to, and within the reach of, all who have an interest in it.

The statement of the city treasurer to Churchman, that he had a warrant for the collection of the assessment against the Braden lot, and that he was about, and intended, to sell the lot to pay the assessment, was, in the light of the facts as found, neither a misrepresentation nor concealment of any

material fact. Nor was the recital in the deed from the city treasurer .to Fletcher and Churchman, contained in our synopsis of the special finding, the representation of any fact upon which the grantees had the right to rely. It was rather in the nature of a legal conclusion, which may or may not have been correctly reached. *Conwell* v. *Clifford*, 45 Ind. 392.

The judgment at general term is affirmed, with costs.

Filed April 1, 1887.