HAARMANN VINEGAR & PICKLE COMPANY ET AL., APPELLEES, V. DOUGLAS COUNTY ET AL., APPELLANTS.

FILED FEBRUARY 25, 1932. No. 28066.

*Henry J. Beal, John W. Yeager, John F. Moriarty* and *T. J. O'Brien,* for appellants.

*Hotz & Hotz* and *Merrow & Murphy, contra.*

Heard before Goss, C. J., EBERLY and PAINE, JJ., and BEGLEY and ELDRED, District Judges.

ELDRED, District Judge.

This is an action brought to recover a refund for certain taxes claimed to have been void and to have been involuntarily paid. The petition contains three causes of action. Haarmann Vinegar & Pickle Company was interested in the first cause of action only, and from the judgment entered on that cause of action, no appeal has been taken, and that company is no longer interested in the case. Cynthia M. Daniel, plaintiff and appellee, was alone interested in causes of action two and three, and from a judgment in her favor the county of Douglas, city of Omaha, and Otto J. Bauman as county treasurer and *ex officio* treasurer of the city of Omaha, defendants and appellants, have appealed.

By the second cause of action Cynthia M. Daniel, appellee, is seeking an accounting and refund of taxes she claims to have involuntarily paid on February 16, 1924, on the real estate involved in this action, in the sum of $3,344.43, being taxes of the city of Omaha for the years 1920, 1921, 1922, and 1923, with interest; and the further sum of $1,009.14, county taxes of Douglas county for the years 1919, 1920, 1921, and 1922, with interest.

Prior to December 16, 1918, the property in question was a part of a much larger tract, referred to as the Iler Grand distillery tract, located near Fourth and Pierce streets in Omaha, and owned by one Adolph L. Meyers. On that date Meyers entered into a contract with the Great Western Commercial Body Company for the sale of the specific part of said Iler Grand distillery tract in question, described by metes and bounds, and containing approximately 39,840 square feet, or 0.9146 acres. The contract was filed for record in the office of the register of deeds on the same date, and recorded in miscellaneous record. Meyers had a first lien upon the property for a balance due him on the purchase price. Appellee became the owner of a lien under a trust deed given by the Great

Western Commercial Body Company to the Omaha Safe Deposit Company. This trust deed likewise described the property by metes and bounds and was recorded in the office of the register of deeds August 10, 1920. During all the years covered by the second cause of action the irregular tract involved herein was assessed along with and as a part of the larger tract of said Meyers as one single entire tract, and taxes computed thereon in an aggregate amount. Foreclosure proceedings were instituted by Meyers, and appellee, with others, was made a party defendant. In the adjusting of the matters involved in that suit, plaintiff acquired the title and paid the taxes in controversy.

Appellee contends that all of the taxes were illegal and void, for the reason that the tract in controversy was assessed and taxed with property other than the property of the plaintiff as an entire tract, at one aggregate valuation, so that it was impossible to determine the amount of taxes for which her property was liable; and, further, that the payment was involuntary.

The district court found against the appellee and in favor of appellants as to county taxes for the years 1919 and 1920, and city taxes for the years 1920 and 1921; and as no cross-appeal has been taken, that part of the decree will not be farther considered.

As to the county taxes for the years 1921 and 1922, and city taxes for the years 1922 and 1923, the trial court sustained the contention of appellee, and entered judgment for a refund of all taxes paid for those years.

By the second cause of action of the petition, the appellee, one of the plaintiffs, claims to have been the owner of the property at the time of paying taxes, but makes no claim of having been a secondary lienholder, nor to having paid taxes to protect any lien held by her against the property. From the bill of exceptions it appears that, during the trial and after the evidence had all been introduced, plaintiff orally asked permission to amend causes of action two and three to conform to the proof, by plead-

ing in the second cause of action the facts as to a secondary lien; the manner in which title to the property was claimed to have been acquired through a foreclosure proceeding; the payment of the taxes by the purchaser at the sale, and redemption by her to protect her secondary lien. The bill of exceptions further discloses that the court, over the objection of the appellants, granted permission to make the amendment. No record of these proceedings nor any amendment appears in the transcript, and there is nothing in the record to indicate that any amendment was in fact made.

By the requested amendment the appellee's second cause of action would be founded upon a different set of facts and theory than originally relied upon. But no amendments having been made the case must be disposed of upon the issues made by the pleadings as embodied in the transcript. The court will not examine the bill of exceptions to determine issues upon which the case was tried. "Permission to amend a pleading is of no avail unless complied with; neither does it raise a presumption that the case proceeded to trial on the theory of the permissive amendment." *Ingram v. Bank of Commerce*, 114 Neb. 64.

According to the petition of the appellee she became the owner of the property February 11, 1924; the evidence supports that allegation. Appellee alleges that she paid the taxes in controversy February 16, 1924, the specific amounts being set out; and that she believed when said taxes were paid that they were due and legal taxes upon said property. It is further alleged in the petition that the property involved had been sold and conveyed by metes and bounds on numerous occasions, and that deeds were of record showing ownership of the tract in controversy to be separate and distinct from other surrounding properties; that the taxes paid covered other and additional property, and that said facts have recently come to light.

The taxes appear to have been paid by the plaintiff un-

der the following circumstances: Decree having been entered by the court in the foreclosure proceeding, the tract involved herein was sold by the sheriff under said decree on July 17, 1923, to one Cook, for the sum of $24,310, which bid included the amount of the first lien under the Meyers contract; and the county taxes for 1919, 1920, 1921, and 1922, and the city taxes for 1920, 1921, 1922, and 1923. It was stipulated on the trial, in substance, that J. Edgar Daniel filed a petition to set aside the sale, and on December 1, 1923, by agreement of parties, he was permitted to take over said property that he had acquired by the assignment of the interest of Adolph L. Meyers and others, and be substituted as party plaintiff; the bid of Cook being handled by Daniel reimbursing Cook for the amount paid out by him up to that time, Daniel directing the property transferred to his wife, the appellee, who furnished the funds therefor. The total amount of taxes thus paid for all years above mentioned aggregated the sum of $4,353.57. This is the substance of all the evidence bearing upon the disposal of the foreclosure proceeding and the acquiring of the title and payment of the taxes by plaintiff. It will be noted that the case was disposed of and taxes paid pursuant to some agreement between the parties, and not on any order or decree of the court. Appellee does not contend in her petition that the taxes were void, but prays for an accounting and recovery of excess amounts paid by her. The trial court sustained the contention of the appellee and found that taxes for 1921 and 1922, county, and 1922 and 1923, city, were entirely void.

The only evidence to support the allegation that the property had been sold and conveyed by descriptions set out, and that deeds were of record showing separate ownership, was the recording of the contract between Meyers and the Great Western Commercial Body Company, which was recorded in the miscellaneous record of the office of the register of deeds, and not in the deed record; and the trust deed from the latter company to the Omaha

Safe Deposit Company, being in effect a mortgage. The contract was not offered in evidence, and the stipulation does not cover its terms and conditions, nor disclose what particular interest or right was conveyed or acquired thereby. There is some claim that the attention of the assessor and county treasurer were directed to the sale of the tract in controversy through certain letters written by the attorney for appellee; but all those letters were written long after the assessments in question were made. So, the question is: Did the failure to have the property involved separately listed and assessed for taxation, under the issues and the evidence in this case, render the entire tax void? The statute appears to contemplate that real estate should be separately listed and assessed for taxation in the name of the owner, as far as the clerk shall be able to ascertain the same. Comp. St. 1929, sec. 77-1602.

There being no deed of record describing the specific tract involved, and no evidence of any notice of sale or request made to have the tract separately listed and assessed, we conclude that the failure of the clerk to separately list the tract, or the assessor to value it as a separate tract, did not render the entire tax void. At most, it was an irregularity only. *Carman v. Harris,* 61 Neb. 635, 645. It did not devolve upon the clerk in making up the list of owners of real estate for assessment purposes to examine miscellaneous records or records of mortgages or trust deeds and determine the legal effect of such instruments, or in whom ownership of property was vested. The interests of the parties under such circumstances are protected by the provisions of section 77-1903, Comp. St. 1929, providing that "the treasurer shall receive taxes on part of any lot, piece or parcel of land charged with taxes, when a particular specification of the tract is furnished." It is evident from the testimony of the witnesses that the tract could be divided and the taxes assessed proportioned thereon, and that it was in fact so handled later, and before taxes for 1924, county, and 1925, city, involved in the third cause of action, were assessed and levied.

The taxes not being void, but at most irregularly assessed, appellee having paid the same without protest, in consummation of an agreement for the purchase of the property, such payment constitutes a voluntary payment, and she is not entitled to a refund therefor. The decree of this court is therefore in favor of the defendants, appellants, as to the second cause of action.

The appellee alleges in her third cause of action that on or about the 1st day of January, 1927, she transferred the property in controversy to the Haarmann Vinegar & Pickle Company under an agreement whereby she was to pay the 1923 and 1924 county taxes, and the 1924 and 1925 city taxes; that in pursuance of such agreement the company withheld the sum of $3,033.37 to cover the taxes upon the property for said years, and interest, on the basis of a statement rendered by defendant treasurer; that she believed at that time that the statement as to said taxes was right, but now discovers it was erroneous. She alleges further that under the date of February 23, 1924, she furnished a plat and description of the property in controversy to the county treasurer, and under date of February 22, 1924, a like description to the county assessor, and that on a number of other dates set out, all subsequent to the dates above mentioned, she directed the attention of the taxing authorities to the specific description of the property involved, then owned by her, but that nevertheless no information was given appellee which would enable her to pay taxes upon her property.

It is further alleged that the assessed valuation of the property involved herein in the year 1924 was $22,300, but that the taxes were based upon an erroneous assessed valuation of $46,750, which it is alleged was the basis of the taxes which were withheld by the Haarmann Vinegar & Pickle Company for taxes for the years mentioned; and therefore the sum withheld from her, to wit, $3,033.37, is in error; that she is entitled to a refund from other parties to the action, and offered by said petition to pay county taxes for the years 1923 and 1924, and city taxes

for 1924 and 1925, based upon the valuation of $22,300, instead of a valuation of $46,750; that the defendant, Omaha Trust Company, is the owner and holder of a tax sale certificate upon said property based upon a valuation of $46,750. Appellee prays for an accounting.

The court found that as to the 1923, county, and 1924, city, the taxes were based upon an erroneous assessment, in that the property was intermingled with other property as one tract, and that there was no basis from which the court could determine what the assessment should have been for the 1923, county, and 1924, city, and found that the county tax for said year 1923, and 1924 city tax were entirely void, and that the appellee was entitled to recover the amount thereof with interest.

All that has been previously said in considering the second cause of action, regarding any conveyance of the property, the recording of instruments and the manner of assessing property, is equally applicable to the taxes, 1923, county, and 1924, city, involved in this cause of action. No additional notice to taxing authorities of any change of ownership appears. The notice of change of interest or of ownership given by the letters referred to were all after the assessment on which the 1923, county, and 1924, city, taxes were computed, must have been made. The tract appears to have been divided and property separately listed and assessed for the tax year following. The only difference as to the situation relative to taxes involved in the second cause of action, and taxes, 1923, county, and 1924, city, in the third cause of action, is as to the manner in which payment was brought about. In the second cause of action the payment of the taxes was made, as heretofore shown, in consummation of an agreement for the purchase of the property; while, in the last mentioned cause, appellee was selling property to the Haarmann Vinegar & Pickle Company; she agreed to pay the taxes for the years involved, and permitted the purchaser to retain the amount necessary for that purpose; that company paid the amount retained to the Omaha Trust Company, the

holder of the tax sale certificate, and the certificate was surrendered to the county treasurer for cancelation. This was a voluntary payment. The tax for 1923, county, and 1924, city, not being void, but at most based on an irregular assessment, and being voluntarily paid, the appellee is not entitled to a refund therefor. The decree of this court on the third cause of action as to the 1923 county and 1924 city tax is in favor of the defendants, appellants.

As to the remaining taxes involved in the third cause of action, that is 1924, county, and 1925, city, it appears that the actual assessed valuation upon which these taxes should have been computed was $22,250, according to the records of the board of equalization; but the taxes for 1924, county, and 1925, city, were in fact computed on the basis of an assessed valuation of $46,750, and entered upon the treasurer's book for collection, and later the real estate was sold at tax sale for said taxes so erroneously computed on a valuation of $46,750 to the Omaha Trust Company. Computed upon such erroneous valuation of $46,750, instead of $22,250, the county taxes for 1924 amounted to $275.49, and should have amounted to only $128.47, the difference on the county tax being $147.02; the city tax for 1925 amounted to $1,163.53, and should have amounted to only $550.05, the difference on the city tax being $613.48. This was the finding of the trial court, and it is likewise the finding of this court.

How the error was made in computing taxes on the wrong amount as assessed valuation does not satisfactorily appear, and it is not material. There was no foundation for the assessment and levy of taxes on any valuation in excess of $22,250, and all such excess taxes are wholly void. *Farmers Co-operative Creamery & Supply Co. v. McDonald,* 100 Neb. 33. If a tax has been levied that is absolutely void, and has been paid, though voluntarily, the amount thereof may be recovered with interest in an action for that purpose. *Wilson v. Butler County,* 26 Neb. 676.

The property of appellee was sold for the void tax, and

the appellants county and city received it from the tax sale purchaser; the appellee furnished the funds used to reimburse the tax sale purchaser, and secure the possession of the certificate and cancelation of said tax, and is entitled to recover the amount thereof from the appellants county and city. The decree of the district court as to this item was that the appellee, Cynthia M. Daniel, recover from the county of Douglas the sum of $147.02, with 6 per cent. interest from November 3, 1926, and from the city of Omaha the sum of $613.48, with 6 per cent. interest from November 3, 1926. The decree of the district court as to the second cause of action and as to the claim for county tax, 1923, and city tax, 1924, involved in the third cause of action reversed and case dismissed as to all of such items. Decree of the district court as to county tax, 1924, and city tax, 1925, affirmed. Each party to pay own costs on this appeal.

AFFIRMED IN PART, AND REVERSED IN PART.